UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
APR 18 2016

| | |
|---|---|
| THE EVANGELICAL GOOD SAMARITAN SOCIETY, AS AUTHORIZED REPRESENTATIVE OF HOWARD JOHNSON;<br><br>Plaintiff,<br><br>vs.<br><br>LYNNE VALENTI, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF THE STATE OF SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES;<br><br>Defendant. | 4:14-CV-04174-VLD<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>DOCKET NO. 19 |

## INTRODUCTION

This matter is pending before the court on the petition of the Evangelical Good Samaritan Society LLC doing business as Luther Manor (hereinafter "Good Samaritan"), as authorized representative of Howard Johnson. See Docket No. 1. Good Samaritan seeks a declaration as to defendants' obligation to provide Medicaid benefits to Mr. Johnson, a resident in plaintiff's long-term care facility. Id. Jurisdiction is premised upon the presence of a federal question pursuant to 28 U.S.C. § 1331, namely an interpretation of the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(17)(B), and implementing regulations. Id. Defendant has moved to dismiss plaintiff's petition for lack of subject matter

jurisdiction. See Docket No. 19. All parties have consented to this court's handling of their case pursuant to 28 U.S.C. § 636(c)(1).

## FACTS

### A. Claims Set Forth in the Parties' Pleadings

The following facts are taken from those factual allegations asserted in the petition and admitted in the answer. See Docket Nos. 1 & 10. Good Samaritan is a limited liability company organized under South Dakota law. It owns and operates Luther Manor, a skilled nursing facility in Sioux Falls, South Dakota, that provides long-term care for its residents. Mr. Johnson has been a resident at Luther Manor since October 1, 2013, at which time he was 89 years old.

Respondent Lynne Valenti is the Secretary of the South Dakota Department of Social Services ("DSS"), which administers South Dakota's Medicaid program. DSS processes Medicaid applications in South Dakota and determines eligibility for benefits. At all times herein, Ms. Valenti acted under color of state law. She is sued in her official capacity only.

Upon Mr. Johnson's admission to Luther Manor, he designated Good Samaritan as his authorized representative to pursue Medicaid benefits on his behalf. Good Samaritan submitted an application for Medicaid benefits on behalf of Mr. Johnson. Good Samaritan asserts the application was filed January 31, 2014. DSS asserts the January application was later voluntarily dismissed by Good Samaritan and another application was submitted on March 31, 2014. DSS denied Mr. Johnson's application on May 29, 2014, due

2

to financial ineligibility. That decision included consideration of resources owned by Mr. Johnson's estranged spouse, Geralda Johnson. Geralda and Howard Johnson executed a separation agreement in 1995.

Good Samaritan requested a fair hearing on DSS's denial of Mr. Johnson's eligibility. A fair hearing was held on October 7, 2014, before the DSS Office of Administrative Hearings. On October 22, 2014, an Administrative Law Judge ("ALJ") issued a decision affirming DSS's decision, holding that Geralda's resources must be considered in determining Mr. Johnson's financial eligibility for Medicaid benefits. That decision was served on Good Samaritan and Mr. Johnson on October 23, 2014.

Good Samaritan asserts that DSS's decision in Mr. Johnson's case, and the state policies on which it is based, are contrary to and preempted by federal law. It seeks a declaration to that effect in this litigation. Good Samaritan seeks Medicaid benefits on Mr. Johnson's behalf for three months retroactive to the date of his application. DSS asserts affirmative defenses of failure to state a claim, *res judicata*/collateral estoppel, waiver, and immunity (11th Amendment, retained, sovereign, and governmental).

**B.     Respondent's Motion to Dismiss**

DSS asserts a plethora of facts and legal theories in support of its motion to dismiss. Factually, DSS asserts that without even considering Geralda Johnson's resources, the resources owned by Mr. Johnson in his own name as of April 1, 2014, were sufficient to render him financially ineligible for Medicaid benefits for long-term care. DSS asserts that South Dakota has established

3

$2,000 as the upper limit of resources an individual may own and still qualify for Medicaid benefits for long-term care. See Docket No. 29, p. 3 n.2 (citing ARSD § 67:46:05:30). DSS asserts that the administrative record on Mr. Johnson's denied application reveals as of April 1, 2014, he owned a CUNA Mutual Fund worth $3,440.43 and a 1998 Ford Escort motor vehicle worth $775. See Docket No. 29 at p. 3, n.1; Docket No. 29-1. On the same date, Mr. Johnson owned a US Bank checking account containing $1,431.55 in funds. Docket No. 29-1. Thus, DSS asserts the issue of whether it properly attributed Geralda's resources to Howard Johnson, and whether that decision was in conflict with federal law, is a moot issue because Mr. Johnson's resources in his own name disqualified him from receiving benefits.

The court issued an order on March 28, 2016, requesting Good Samaritan to address the above facts concerning Howard's assets in his own name and the effect of those facts on the legal analysis of the claims at issue. See Docket No. 31. Good Samaritan did not respond to the court's order and has not, therefore, addressed these facts.

## DISCUSSION

### A.  Standard for Motions to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction–they may adjudicate only those cases within their articulated jurisdiction under Article III of the Constitution or a valid statute enacted pursuant to Article III. Marbury v. Madison, 1 Cranch (5 U.S.) 137, 173-80 (1803). A motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) challenges the

4

court's authority and competence to hear the case pending before it. 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure, § 1350, at 64 (3d ed. 2004); Yankton Sioux Tribe v. United States Army Corps of Engineers, 194 F. Supp. 2d 977, 983 (D.S.D. 2002). "[I]t is a cardinal rule upheld by countless federal cases that the parties may not create or destroy jurisdiction by agreement or by consent." 5B Fed. Practice & Procedure, § 1350, at 128. The issue of a federal court's subject matter jurisdiction, or lack thereof, is central to the tenants of judicial federalism, the distribution of judicial power between state and federal courts. Id. at 120-33.

In evaluating a motion to dismiss based on lack of subject matter jurisdiction, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977)). Because what is at issue is the court's power to hear the case at all, courts are "free to weigh the evidence," hold an evidentiary hearing, consider affidavits and other documents in order to "satisfy itself as to the existence" of jurisdiction. Id. (quoting Mortensen, 549 F.2d at 891).

When a court elects to look to evidence outside the pleadings, it does not convert the 12(b)(1) motion into a motion for summary judgment. Deuser v. Vecera, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998) (citing Osborn, 918 F.2d at 729). In this way, a Rule 12(b)(1) motion is different from a motion to dismiss

for failure to state a claim under Rule 12(b)(6). <u>Id.</u> The party invoking a federal court's jurisdiction has the burden to show such jurisdiction exists. <u>Osborn</u>, 918 F.2d at 730.

DSS moves to dismiss Good Samaritan's complaint on multiple grounds, including lack of subject matter jurisdiction due to mootness under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Because the only argument the court addresses below is the lack of subject matter jurisdiction, the court applies the Rule 12(b)(1) standard discussed above. In that regard, the court does not accept as true the factual allegations in Good Samaritan's complaint and the court will consider the documents submitted by DSS in connection with its motion to dismiss.

The court has invited response from Good Samaritan on these documents and has invited Good Samaritan to explain how the facts gleaned from these documents bear on the question of the court's subject matter jurisdiction. Good Samaritan has chosen not to respond.

**B.   The Mootness Doctrine**

Federal courts are granted jurisdiction to hear only "actual, ongoing cases and controversies." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990). <u>See also</u> <u>County of Mille Lacs v. Benjamin</u>, 361 F.3d 460, 463 (8th Cir. 2004) (citing U.S. Const. art. III, § 2, cl. 1). To establish federal court subject matter jurisdiction, a party "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Lewis</u>, 494 U.S. at 477. The Constitution "denies

federal courts the power 'to decide questions that cannot affect the rights of the litigants in the case before them.' " Id. (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). A federal court's decree must resolve "real and substantial controversies" rather than opining on "a hypothetical state of facts." Id. It does not matter that a case presented a live controversy at its inception if, at the time the court evaluates its jurisdiction, that live controversy has abated. Id.

Sometimes the "passage of time or a change in circumstance" renders the issue in a case no longer "live." Ark. AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1993). When that happens, absent special circumstances, it renders the case "moot" and prevents the court from granting relief. Id. Mootness is "a jurisdictional bar, and must be considered before reaching the merits of the case." Id. See also Charleston Housing Auth. V. United States Dept. of Ag., 419 F.3d 729, 739 (8th Cir. 2005).

Courts may hear an otherwise moot case "if the challenged action is of too short a duration to be litigated fully prior to its cessation or expiration"—i.e. it is "capable of repetition yet evading review." Ark. AFL-CIO 11 F.3d at 1435. Also, the court may hear a moot case if "there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. It is immaterial if the same event might recur to another party—the party must demonstrate the event will recur to *them*. Id. Certainty of recurrence is not required, but "a mere physical or theoretical possibility is insufficient." Id.

7

Dismissals for lack of subject matter jurisdiction are without prejudice because they are not adjudications on the merits. Benjamin, 361 F.3d at 464.

Here, the presence of federal question jurisdiction is premised on Good Samaritan's assertion that DSS implemented the federal Medicaid program in a fashion that was contrary to federal law in Howard Johnson's case by attributing to him assets controlled by Geralda and over which Howard had no control. See Docket No. 1. In fact, the documents submitted by DSS show that Howard was, at the relevant time, ineligible for Medicaid benefits because he held assets in his own name which placed him above the eligibility limits. Good Samaritan does not dispute this evidence. Neither does Good Samaritan argue that the eligibility limits are themselves in conflict with federal law. Thus, it is clear that, regardless of the rationale DSS expressed in denying Medicaid benefits to Good Samaritan on behalf of Howard, Howard was not eligible for those benefits in any case as of April 1, 2014.

To say this case is, therefore rendered "moot" is something of a misnomer. The facts regarding Howard's assets existed all along. It is probably more accurate to say that federal question jurisdiction never existed in the first place because DSS's denial of Medicaid benefits to Howard was never in conflict with federal law. In any case, the court is satisfied that jurisdiction does not now exist because there is no "injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis, 494 U.S. at 477. This court cannot declare DSS's decision to deny Medicaid benefits to Good Samaritan on Howard's behalf was in conflict with federal law.

8

Nor can the court declare that DSS should grant Howard benefits retroactive to October 1, 2013, in light of the facts now known.

Because Good Samaritan did not accept the court's invitation to address this matter, no argument is made that one of the exceptions to mootness applies in this case. The court is aware of no circumstances justifying application of one of the exceptions. Therefore, the court concludes it is without jurisdiction to entertain Good Samaritan's claim and will dismiss this matter without prejudice.

## CONCLUSION

Based on the foregoing facts, law and analysis, it is hereby

ORDERED that defendants' motion to dismiss [Docket No. 19] is granted and plaintiff's complaint is hereby dismissed without prejudice for lack of subject matter jurisdiction.

DATED April 18, 2016.

BY THE COURT:

*Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge